Douglas A. Miro (DM 2535)
Douglas Q. Hahn (DH 3032)
OSTROLENK, FABER, GERB & SOFFEN, LLP
1180 Avenue of the Americas
New York, New York 10036
Telephone: (212) 382-0700
Facsimile: (212) 382-0888

and

Kory D. Christensen
Marc T. Rasich
David L. Mortensen
Matthew D. Thayne
STOEL RIVES LLP
201 S. Main St., Suite 1100
Salt Lake City, Utah  84111
Telephone:  (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Defendant/
Counterclaim Plaintiff Simpligent LLC

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RATES TECHNOLOGY INC., | Civil Action No.: |
|       Plaintiff/Counterclaim Defendant, | 05-CV-2729 (TCP) (ARL) |
| v. | **ECF CASE** |
| SIMPLIGENT, LLC, | |
|       Defendant/Counterclaim Plaintiff, | |
| and | |
| STOEL RIVES, LLC AND MARC RASICH, | |
|       Defendants. | |

**MEMORADUM OF LAW IN SUPPORT OF SIMPLIGENT, LLC'S MOTION TO DISMISS RATES' NEWLY ADDED EXTORTION/PRIMA FACIE TORT CLAIM PURSUANT TO FED. R. CIV. P.12(B)(6) AND FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS ................................................................................... 3

SUMMARY OF ARGUMENT ............................................................................ 5

ARGUMENT ....................................................................................................... 6

I.   RATES' NEWLY ADDED CLAIM MUST BE DISMISSED
     PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO
     STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ................... 6

     A.   The Fed. R. Civ. P. 12(b)(6) Standard ...................................... 7

II.  RATES HAS FAILED TO STATE A CLAIM BECAUSE
     SIMPLIGENT IS IMMUNE TO RATES' CLAIMS UNDER
     THE *NOERR-PENNINGTON* DOCTRINE ......................................... 7

III. RATES HAS FAILED TO STATE A CLAIM UNDER UTAH LAW .............. 10

     A.   New York's Choice Of Law Rule ............................................ 10

          1.   New York's Interest Analysis Requires That Utah Law
               Applies ...................................................................... 10

     B.   Utah Law Mandates Dismissal ................................................ 12

IV.  NEW YORK LAW WOULD ALSO MANDATE DISMISSAL ...................... 13

     A.   New York Does Not Recognize A Private Action For
          Extortion And Assuming, *Arguendo*, That One Exists,
          Rates Has Failed To Allege Theft Of Rates' Property ............ 13

     B.   Rates Fails To State A Claim For Prima Facie Tort ................ 15

          1.   Rates Has Not Pled Special Damages ........................... 16

V.   CALIFORNIA LAW MANDATES DISMISSAL ................................... 18

      A.    Rates' Property Was Not Taken ............................................................... 18

      B.    California Civil Code §47 Immunity Applies ......................................... 20

VI.    DEFENDANTS ARE ENTITLED TO
SANCTIONS FOR THIS RETALIATORY CASE ............................................. 21

CONCLUSION .................................................................................................... 25

## TABLE OF AUTHORITIES

**United Stated Constitution**

U.S. Const. amend. I ................................................................................................ 8

**Federal Cases**

*Aircapital Cablevision, Inc. v. Starlink Communications Group,*

    634 F. Supp. 316 (D. Kan. 1986) ............................................................... 9, 10

*Alcatel Internetworking, Inc. v. Rates Technology, Inc.,* No.: 03-CV-9449 ................................ 23

*Ann-Margret v. High Society Magazine, Inc.,* 498 F. Supp. 401 (S.D.N.Y. 1980) ..................... 17

*Becker v. Kroll,* 340 F.Supp.2d 1230 (Utah 2004) ....................................................... 13

Christian v. Mattel, 286 F.3d 1118, 1121 (9th Cir. 2002) ............................................. 24

Christian v. Mattel, CV 9902820 NM (C.D. Cal.) ....................................................... 24

*Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358 (5th Cir. 1983) ......................... 9

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,*

    944 F.2d 1525 (9th Cir. 1991) ............................................................... 8, 10

*Conley v. Gibson,* 355 U.S. 41 (1957) ................................................................. 7

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) ...... 8

*Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) ....................................................... 10

*First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763 (2d Cir.) .............................. 7

*Ford Motor Co. v. Money Makers Auto. Surplus, Inc.,*

    2005 U.S. Dist. LEXIS 22232 (D. Neb. 2005) ............................................... 9

*Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir. 1995) ................................... 7

*Hufsmith v. Weaver,* 817 F.2d 455 (8th Cir. 1987) .................................................. 8

*IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F.Supp.2d 812 (D. Wis. 2001) ........................................ 8

*IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002)........................................ 8

*In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001)........................................ 10

*Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,

    2001 WL 951582 (D. Minn. 2001) ........................................ 8, 9

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................ 10

*LCR Technologies Inc. v. Alcatel Internetworking, Inc.*,

    Index No.: 05-1166 (E.D.N.Y. Wexler, J.) ........................................ 2, 22

*Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345 (S.D.N.Y. 1997) ........................ 8, 9, 10

*Mayer v. Morgan Stanley & Co.*, 703 F. Supp. 249 (S.D.N.Y. 1988)........................................ 16, 17

*Melea Ltd. v. Quality Models, Ltd.*, 345 F. Supp. 2d 743 (D. Mich. 2004)........................................ 8, 9

*Merrill Lynch Futures, Inc. v. Morici*, 1990 U.S. Dist. LEXIS 152 (S.D.N.Y. 1990) ........... 16, 17

*O'Keefe v. Niagra Mohawk Power Corp.*, 714 F. Supp. 622 (N.D.N.Y. 1989) ........................... 17

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)... 8

*St. Clair v. National Ass'n of Legislative Review*,

    2001 U.S. Dist. LEXIS 9438 (N.D. Cal. 2001)........................................ 18

*Thermos Co. v. Igloo Products Corp.*, 1995 U.S. Dist. LEXIS 14221 (N.D. Ill. 1995)................ 9

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965)........................................ 8

## State Cases

*Aronson v. Kinsella*, 58 Cal. App. 4th 254 (Cal Ct. App. 1997) ........................................ 21

*Asia Investment Co. v. Borowski*, 133 Cal. App. 3d 832 (Cal. Ct. App. 1982) ........................... 21

*Belsky v. Lowenthal*, 62 A.D.2d 319 (1st Dept. 1978)........................................ 16

*Broadbent v. Board of Educ. of Cache County Sch. Dist.*, 910 P.2d 1274 (Utah App. 1996)...... 12

*Burns Jackson Miller Summit & Spitzer v. Linder*, 59 N.Y.2d 314 (1983) .................................. 15

*Cayley v. Nunn*, 190 Cal. App. 3d 300 (Cal. Ct. App. 1987) ........................................ 21

*Curiano v. Suozzi*, 63 N.Y.2d 113 (N.Y. 1984) ......................................................... 16

*Doit, Inc. v. Touche, Ross & Co.*, 926 P.2d 835 (1996) ........................................... 13

*Drago v. Buonagurio*, 46 N.Y.2d 778 (1978) ......................................................... 22

*Engel v. CBS, Inc.*, 93 N.Y.2d 195 (1999) ............................................................. 22

*Fuhrman v. California Satellite Systems*, 179 Cal. App. 3d 408 (Cal. Ct. App. 1986) .......... 19, 21

*Milliner v. Elmer Fox & Co.*, 529 P.2d 806,808 (Utah 1974) ..................................... 12

*Niagra Mohawk Power Corp. v. Testone*, 272 A.D.2d 910 (4th Dept. 2000) ...................... 14, 15

*Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519 (1994) .......................................... 10, 12

*Richards Irrigation Co. v. Karren*, 880 P.2d 6 (Utah App. 1994) ................................ 12

*Rubin v. Green*, 4 Cal. 4th 1187 (Cal. 1993) ....................................................... 21

*Schultz v Boy Scouts*, 65 N.Y.2d 189 (1985) ......................................................... 11

*Sheehy v. Big Flats Community Day,* 73 N.Y.2d 629 (1989) ...................................... 14, 15

*Silberg v. Anderson*, 50 Cal. 3d 205 (Cal. 1990) ................................................... 19, 20

*Tsafatinos* v. Ward, 676 N.Y.S.2d 748 (N.Y. Civ. Ct. 1998) ...................................... 22

## Federal Statutes

28 U.S.C. §1927 ............................................................................................. 1

35 U.S.C. § 304 ............................................................................................. 4

Fed. R. Civ. P. 11 .......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 7, 10

**State Statutes**

Cal. Civ. Code §47 ............................................................................................. 18, 20, 21

New York Penal Law §155.05 ................................................................................. 15

Utah Code Ann. § 76-4-406 ................................................................................... 12

Defendant Simpligent, LLC ("Simpligent") hereby moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), the purported new cause of action for extortion/prima facie tort added by Plaintiff Rates Technology Inc. ("Rates") in its September 30, 2005 Amended Complaint (the "Amended Complaint").  Simpligent also moves for sanctions against Rates pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. §1927 for filing and maintaining the instant frivolous and retaliatory extortion claim and for unnecessarily multiplying these proceedings by necessitating the instant motion.  A copy of the Amended Complaint is annexed to the October 31, 2005 Declaration of Marc Rasich (the "Rasich Decl.") as Exh. 1.[1]

## INTRODUCTION

Rates' extortion/prima facie tort claim against Simpligent must be dismissed because it is meritless and an abuse of the court system.  Rates brings its new claim, not just against Simpligent, but also against Simpligent's attorneys, Stoel Rives, LLP ("Stoel Rives").  The basis of Rates' new claim is nothing more than a letter (the "Letter") written by Simpligent's attorneys, which simply informed Rates that Simpligent may file a request with the United States Patent and Trademark Office ("PTO") that at least one of the patents-in-suit be reexamined if this case continued.[2]  A copy of the Letter is Rasich Decl., Exh. 2.  Simpligent and its attorneys did nothing improper.  Simpligent, through its attorneys, was simply defending itself in the face of what it believed to be a frivolous patent infringement suit.  Simpligent was merely negotiating and posturing with its adversary during the course of an ongoing litigation.

Rates' extortion/prima facie tort cause of action is invalid as a matter of law.  First, any Request for Reexamination ("Reexam") filed by Simpligent, or any advance notice that Simpligent may have given to Rates that it intended to file the Reexam, is absolutely privileged

---

[1] All Exhibits hereto are annexed to the Rasich Decl.
[2] The Patent Reexamination process is explained in more detail below.

based on the First Amendment right to petition the government as reflected by the *Noerr-Pennington* doctrine.

Second, Utah law, which is the controlling law here, does not recognize a private cause of action for extortion, nor does it recognize a cause of action for prima facie tort.

Even if New York or California law was the controlling law, Rates extortion/prima facie tort allegations still do not state a claim upon which relief can be granted. New York does not recognize a private right of action for extortion. New York does recognize a claim for prima facie tort. However, New York jurisprudence requires pleading special damages, which Rates has utterly failed to do.

California law is the opposite, it recognizes a private right of action for extortion but does not permit claims for prima facie tort. Even under California law, however, a claim for extortion must be based on the misappropriation of property. The absence of a claim that property was taken has been held "fatal" by the California Supreme Court and is applicable in the instant case. Rates has not plead that its property was taken, merely that it received a threatening letter.

It is important to note here that Rates has not yet served the new attorney defendants, instead choosing to test the waters with its claim against Simpligent alone. It is obvious, however, that if Rates' frivolous claim for extortion/prima facie tort is permitted to continue, Simpligent's attorneys will quickly be served and made parties to this action. Rates has a pattern of filing bad-faith retaliatory lawsuits against its adversary's lawyers and law firms and has done so in another case that was recently before this Court, *LCR Technologies Inc. v. Alcatel Internetworking, Inc.*, Index No.: 05-1166 (E.D.N.Y. Wexler, J.).[3] In that action, Judge Wexler saw through Rates pretext of suing their adversary's counsel, and rebuked this practice as

---

[3] That case has now been remanded to the Supreme Court for the State of New York, Suffolk County.

2

"harassing" and "sharp." Judge Wexler's June 14, 2005 Order, pp. 10-11, a copy is Rasich Decl, Exh. 3.

Simpligent brings up Rates' previous conduct to put the instant motion in perspective. Rates has filed frivolous claims against its opponents' counsel before and will continue to file non-meritorious claims against its adversaries and/or their counsel in order to create settlement pressure. This type of aggressive litigation tactics should not be tolerated, and must be stopped, which forms the basis for the present sanction request.

## STATEMENT OF FACTS

### The Instant Lawsuit

Through a series of phone calls, which began on or about January 3, 2005, Rates accused several of Simpligent's products of patent infringement. Rasich Decl., ¶5. On January 5, 2005, Rates directed a letter to Simpligent in Utah threatening to sue Simpligent based on the alleged infringement. Rasich Decl, ¶5. After an investigation into Rates' claims, including identification of prior art, Simpligent filed a Declaratory Judgment action against Rates in District Court in Utah, but did not serve Rates with process, in the hopes of an amicable resolution. Rasich Decl, ¶6. Simpligent's further investigation revealed several prior art references, which in Simpligent's opinion invalidate at least one of Rates' patents-in-suit. Rasich Decl, ¶7. On May 19, 2005, after settlement discussions had stalled, Rates forwarded Simpligent a Complaint that it claimed that it intended to file in New York District Court if a settlement was not reached. Rasich Decl, Exh¶. 8.

### The Letter

Based on Simpligent's belief that at least one of Rates patents-in-suit was invalid based upon the prior art, Simpligent, through its counsel Marc Rasich, wrote Rates a letter, which is the issue of this claim, stating:

3

> Should Rates decide to file and serve its lawsuit in New York, we are prepared to use this prior art to initiate a reexamination of Rates' patents in the Untied States Patent and Trademark Office.

Rasich Decl., ¶9 and Exh. 2.  This statement, from a party that just received a cease and desist letter and a Complaint, is the entire basis for Rates' extortion claim.  As the Court can plainly see, this is simply an innocent letter expressing Simpligent's intent to defend itself in the face of what it believed to be a baseless patent infringement claim.  As a litigant in a case already filed in Utah and a potential case in New York, Simpligent was entirely justified to respond that it may file for patent reexamination.  Any other result would chill party's ability to communicate the merits of their case to their adversary in hopes of resolving a case without trial.

## Patent Reexamination

One method of challenging the invalidity of a patent is to file a petition for reexamination with the United States Patent and Trademark Office (the "PTO").  This is a commonly used procedure.

A request for reexamination may be filed by anyone at any time as long as there is a "substantial new question of patentability" affecting one or more claims of a patent in view of prior patents and printed publications.  35 U.S.C. § 304.  If the PTO agrees that there is a "substantial new question of patentability," it will grant a Request for Reexamination, and will reexamine the patent claims.  *Id.*  The *ex parte* reexamination proceeds between the patent owner and the Patent Office based on prior art patents or printed publications and may result in affirmation or cancellation of one or more claims in the reexamined patents.

In the case of at least one of Rates' patents, Simpligent believes that there is a clear "substantial new question of patentability," which, *inter alia*, Simpligent intends to raise if it files a Request for Reexamination.  Simpligent believes that it can identify prior art disclosing, for all relevant purposes, each of the aspects of its product that is accused of infringement by

4

Rates.  At least under the broad claim interpretations proposed by Rates, Simpligent believes this prior art clearly invalidates one or more claims in Rates' patents-in-suit.  To the extent that Simpligent's product infringes one or more claims in Rates' patents-in-suit, Simpligent believes that these claims are necessarily invalid in light of this prior art.

Moreover, Simpligent believes Rates breached its duty of candor to the U.S. Patent and Trademark Office ("USPTO") under 37 CFR § 1.56, which requires a patentee to disclose all information "material to patentability."  Rates knew about a certain prior patent application in Great Britain (GB 2 218 595) that was very similar to its claimed invention (this prior art was cited to Rates in a patentability report), but did not make this application known to the PTO, contrary to its duty of candor.

## SUMMARY OF ARGUMENT

Rates' Amended Complaint tries to plead a new claim sounding in either extortion or prima facie tort.  But regardless of the nature of Rates' newly added claim, Rates fails to state a claim upon which relief can be granted.  The *Noerr-Pennington* doctrine provides absolute immunity for petitioning the government, including the PTO, and even extends to conduct during litigation, such as the Letter in the instant case.  In addition, Rates' newly amended claim must also be dismissed for failing to state claim upon which relief can be granted under the controlling state law.  New York's choice of law rules establish that Rates' newly added claim is governed by Utah law as the forum with the most significant contacts and the location of the alleged tortious activity.  Utah does not recognize a private cause of action for either of those claims.

Even if Utah law did not apply, Rates still does not state a claim upon which relief can be granted under New York or California law.  New York law, like Utah law, does not recognize a private cause of action for extortion.  While New York law does have a cause of action for prima

facie tort, Rates has not pled, nor can it prove special damages, *i.e.*, specific and measurable losses.

Rates will also be unsuccessful under California law.   While California does have a private cause of action for extortion, Rates has not pled, nor can it prove, that Rates has lost any property as a result of the extortion attempt.   And, like the *Noerr-Pennington* doctrine, the California civil code expressly provides immunity for the complained-of actions.

Finally, because Rates has pled a claim that is completely unwarranted in fact and law against both its adversary and its adversary's attorneys, Rates should be sanctioned for filing such a frivolous claim.   Consequently, Simpligent should be awarded its attorneys' fees in responding to the Amended Complaint

## ARGUMENT

I.   **RATES' NEWLY ADDED CLAIM MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Based on Rates' pleadings, Rates has either pled a cause of action for extortion or prima facie tort as follows:

> "[t]he Extortion Letter constitutes a threat to obtain an official act - e.g., Simpligent's [sic] and the Stoel Defendants' threat to initiate a patent reexamination proceeding - and although [Rates] has repeatedly explained to Simpligent or the Stoel Defendants that there is no basis for such a threatened examination as a matter of law, and has asked for a meeting to further explain this and to answer questions on the subject, Simpligent and the Stoel Defendants continue to threaten to initiate such a meritless reexamination, both orally and in writing, including as recently as September 29, 2005.  Such conduct by Simpligent and the Stoel Defendants **constitutes coercion, extortion, and a prima facie tort, including a violation of California's extortion laws**, since the Extortion Letter was addressed and sent to [Rates'] counsel in California.

Amended Complaint, ¶12.

6

Despite Rates' failure to clearly state its cause of action, it appears that this claim is either civil extortion or prima facie tort. But regardless of whether Rates is trying to claim civil extortion or prima facie tort, this claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  The Fed. R. Civ. P. 12(b)(6) Standard

A Complaint is properly dismissed under Rule 12(b)(6) when a plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While the Court must accept as true all of the allegations in the pleadings and must give Plaintiff the benefit of every favorable inference that can be drawn from the Complaint's allegations, this general rule is not without limitations. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088, 1092 (2d Cir. 1995). Bald assertions, subjective characterizations and legal conclusions need not be accepted as true. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.), *cert. denied*, 513 U.S. 1079 (1994).

Here, Rates can prove no set of facts in support of its extortion or prima facie that would entitle it to relief. As a result, these claims must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### II.  RATES HAS FAILED TO STATE A CLAIM BECAUSE SIMPLIGENT IS IMMUNE TO RATES' CLAIMS UNDER THE *NOERR-PENNINGTON* DOCTRINE

The complained-of activities are immune to Rates' claim under the *Noerr-Pennington* doctrine, which immunizes a party that exercises its right to petition the government and courts.

The *Noerr-Pennington* doctrine first arose out of the First Amendment right to petition the government as applied to the Sherman Act to provide immunity from antitrust suits when petitioning the government.[4] *See Eastern Railroad Presidents Conference v. Noerr Motor*

---

[4] The First Amendment provides an absolute right "to petition the Government for a redress of grievances." U.S. Const. amend. I.

*Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). Based upon the right to petition the government, including the fundamental right to seek redress in the courts, the *Noerr-Pennington* doctrine "provides that a party may not be subjected to liability for its attempt to have its rights protected by the courts." *Melea Ltd. v. Quality Models, Ltd.*, 345 F. Supp. 2d 743, 758 (D. Mich. 2004) (*quotations omitted*); *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-57 (1993). Moreover, under the *Noerr-Pennington* doctrine, "parties may petition the government for official action favorable to their interests without fear of suit even if the result of the petition, if granted, might harm the interest of others." *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F.Supp.2d 812, 821 (D. Wis. 2001), *aff'd in relevant part, rev'd in part on other grounds*, *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002).

Moreover, the *Noerr-Pennington* doctrine is not limited to the arbitration arena. In the years since its inception, courts have expanded the *Noerr-Pennington* doctrine to provide immunity for other litigation activities. *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345, 355 (S.D.N.Y. 1997); *Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 2001 WL 951582 (D. Minn. 2001) ("The doctrine has been extended to include cases outside of the antitrust context based solely on the First Amendment right to petition the government.") (*citing Hufsmith v. Weaver*, 817 F.2d 455, 4358-59 (8th Cir. 1987) (the doctrine is not limited to the antitrust context)).

The *Noerr-Pennington* doctrine is typically raised to immunize the act of petitioning itself, *i.e.*, filing a lawsuit, but has also been extended to conduct "incidental to the prosecution of the suit," such as letters between counsel or to an adversary's customers. *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993). Indeed, courts that have considered this issue have extended *Noerr-*

*Pennington* immunity to shield non-judicial acts that are "reasonably and normally attendant upon protected litigation." *Matsushita Elecs.*, 974 F. Supp. at 359 (extending immunity to infringement warning letters sent to customers of defendants) (*quoting Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) (citing cases)). Some cases have extended the immunity to attendant publicity and to letters threatening court action. *See, e.g., Thermos Co. v. Igloo Products Corp.*, 1995 U.S. Dist. LEXIS 14221, *14-15 (N.D. Ill. 1995) (extending immunity to cease and desist letters sent to alleged infringers); *Aircapital Cablevision, Inc. v. Starlink Communications Group*, 634 F. Supp. 316, 325-26 (D. Kan. 1986) (extending immunity to press releases publicizing the lawsuit and threatening further legal action); *Ford Motor Co. v. Money Makers Auto. Surplus, Inc.*, 2005 U.S. Dist. LEXIS 22232, *12-13 (D. Neb. 2005) (dismissing plaintiff's counterclaim for tortious interference because statements made by defendant during litigation "are privileged under the First Amendment via the *Noerr-Pennington* doctrine, which provides absolute immunity from any liability arising out of a party's filing and maintaining a civil lawsuit. Thus, all of [defendant's] statements about which defendants complain occurred in the course of this litigation and the Noerr-Pennington doctrine fully immunizes [defendant] from any liability.") (*citing Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 2001 WL 951582 (D. Minn. 2001)); *Melea Ltd.*, 345 F. Supp.2d at 758 ("[T]he Noerr-Pennington doctrine bars Defendant's counterclaim for tortious interference with a business relationship arising from Plaintiffs' letters to Defendant's customers).

In the instant case, the *Noerr-Pennington* doctrine provides an absolute defense to Simpligent's activities. A party's right to petition the government for a Reexam is exactly the type of conduct that the *Noerr-Pennington* doctrine is designed to protect. Defendants should not be subject to liability for their attempt to have their rights protected by the government. The *Noerr-Pennington* doctrine would not only immunize Simpligent from filing for Reexam with

the PTO, but it would also immunize Simpligent's Letter threatening to file the Reexam, which is conduct "incidental to the prosecution of this suit" and is "reasonably and normally attendant upon protected litigation." *Columbia Pictures*, 944 F.2d at 1528-29 and *Matsushita Elecs.*, 974 F. Supp. at 359.

## III.   RATES HAS FAILED TO STATE A CLAIM UNDER UTAH LAW

Despite Rates' position that California's extortion laws apply, Utah law controls here pursuant to New York's choice of law rules.  Utah does not recognize an individual cause of action for extortion or prima facie tort.  As a result, Rates' claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

### A.   New York's Choice of Law Rules

New York's choice of law rules dictate that Utah law applies with respect to Rates' extortion and prima facie claims.  Federal courts are required to apply the substantive law of the state in which the district court is located, including that state's choice of law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal district court required to apply forum state's choice of law rules to determine which state's law governs); *In re Gaston & Snow*, 243 F.3d 599, 605-607 (2d Cir. 2001), *cert. denied*, 534 U.S. 1042 (2001) (New York District Court applies New York's choice of law rules.).  Here, this District Court, sitting in New York, will follow New York's choice of law rules. *Id.*

### 1.   New York's Interest Analysis Requires That Utah Law Applies

New York follows the "greater governmental interest" analysis to determine choice of law in tort claims. *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (1994) ("In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation."); *see also Schultz*

*v Boy Scouts*, 65 N.Y.2d 189, 197 (1985).  The test for determining the greater interest is twofold: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss."  *Id.* 198.  Analysis of these two factors indicates that Utah law governs.

As for the first factor, the Utah contacts are significant.  The significant contacts here are the Letter, which was sent by a Utah company, through its Utah attorneys and drafted under the expectation that the governing law was Utah.  The Letter was directed to and received by a New York Company, through its California representative, where the alleged harm was felt.  *See* Amended Complaint, ¶12.

This factor could fairly support either application of Utah or New York law.  Any alleged contact with the State of California is tangential.  The Letter was sent to Rates' lawyer in California but directed to Rates in New York.  The only tie that California has with Rates claims is that its lawyers are located there.  Thus, any claimed California contacts are weaker than the New York contacts because while the Letter was sent to both New York and California, it was allegedly meant to extort the entity in New York, not the lawyer in California, who is not even a plaintiff.

The second consideration, i.e., whether the purpose of the law is to regulate conduct or allocate loss, indicates that Utah law governs Rates' allegations.  Under New York law, where the purpose of the law is allocate loss, "such as charitable immunity statutes, wrongful death statutes, vicarious liability statues, and contribution rules," New York precedent will apply New York State law.  But, where the law is primarily designed to regulate conduct, the New York Court of Appeals holds that the law of the location of the alleged tort governs. As the Court of Appeals explained:

> when the conflicting rules involve the appropriate standards of
> conduct, rules of the road, for example, the law of the place of the
> tort will usually have a predominant, if not exclusive concern …
> because the locus jurisdiction's interest in protecting the
> reasonable expectations of the parties who relied on it to govern
> their primary conduct and in the admonitory effect that applying its
> law will have on similar conduct in the future assume critical
> importance and outweigh any interest of the common-domicile
> jurisdiction.
>
> Conduct-regulating rules have the prophylactic effect of governing
> conduct to prevent injuries from occurring.  If conflicting conduct-
> regulating laws are at issue, the law of the jurisdiction where the
> tort occurred will generally apply because that jurisdiction has the
> greatest interest in regulating behavior within its borders.

*Padula*, 84 N.Y.2d at 522.

Here, Rates has framed its claim as sounding in extortion which is designed to regulate

conduct, not to allocate loss.  Thus, New York law holds that Utah law should apply under this

factor because that is where the alleged tort occurred, not in New York or California.

Thus, both factors under New York's interest analysis holds that Rates' allegations of

extortion are governed by Utah law.

**B.      Utah Law Mandates Dismissal**

Rates' claim must be dismissed as a matter of law because Utah does not recognize either

a tort for extortion or prima facie tort.

Utah does not recognize a private right of action for criminal statute violations unless the

legislature provides "some specific direction" to do so.  *Broadbent v. Board of Educ. of Cache

County Sch. Dist.*, 910 P.2d 1274, 1278 (Utah App. 1996); *Milliner v. Elmer Fox & Co.*, 529

P.2d 806, 808 (Utah 1974) (The Utah Supreme Court holds that a statute must "provide for a

private right of action for its violation " and that criminalizing certain conduct was insufficient

absent an express legislative intent); *Richards Irrigation Co. v. Karren*, 880 P.2d 6 (Utah App.

1994).  Here, Utah's extortion statute, Utah Code Ann. § 76-4-406, does not create a private right

of action and the courts that have considered this have rejected any private right of action for extortion. *Becker v. Kroll*, 340 F.Supp.2d 1230, 1237 (Utah 2004) ("To the extent Plaintiff has attempted to claim a private cause of action for extortion … those claims are dismissed.").

Similarly, Utah does not recognize a cause of action for prima facie tort. The Utah Supreme Court dismissed an attempt to plead a cause of action for prima facie tort in *Doit, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 841 n. 11 (1996), noting:

> Plaintiffs additionally allege a cause of action titled 'prima facie tort' against all accountant defendants. **However, plaintiffs have not supplied, and we have been unable to find, any legal precedent which indicates that such a cause of action exists in Utah.** (Emphasis added).

As Utah law does not recognize Rates' newly added claim, regardless of whether it sounds in extortion or prima facie tort, it should be dismissed with prejudice.

Even assuming, *arguendo*, that either New York or California law applies, Rates has still failed to state a claim under either New York or California law upon which relief can be granted.

## IV.  NEW YORK LAW WOULD ALSO MANDATE DISMISSAL

Even if New York law were to apply, Rates newly added claim must be dismissed because New York, like Utah, does not recognize a private right of action for extortion. In addition, even if Rates' new claim sounds in prima facie tort, Rates has failed to sufficiently plead a cause of action for prima facie tort, which requires the heightened pleading requirement of special damages.

### A.  New York Does Not Recognize A Private Action For Extortion And Assuming, *Arguendo*, That One Exists, Rates Has Failed To Allege Theft Of Rates' Property

Rates has not plead a cognizable cause of action for extortion because New York law does not recognize a private right of action for attempted extortion, which is what Rates extortion

claim really appears to allege.[5]  *Niagra Mohawk Power Corp. v. Testone*, 272 A.D.2d 910, 911

(4th Dept. 2000) (noting that "we finding no legislative intent" to create a cause of action for

attempted extortion).

Even in the rare circumstances where New York would permit a private right of action

for the violation of a criminal statue, Rates has no claim.  Under New York law, "a penal statute

may give rise to an implied private right of action where (1) plaintiff is a member of the class for

whose particular benefit the statute was enacted (2) recognition of a private right of action would

promote the legislative purpose; and (3) creation of such a right of action would be consistent

with the legislative scheme."  *Niagra Mohawk*, 272 A.D.2d at 911 (*citing Sheehy v. Big Flats*

*Community Day,* 73 N.Y.2d 629, 633-634 (1989).  In the instant case, none of these factors favor

finding a private right of action.

Moreover, even if New York recognized a private right of action, the activities of which

Rates complains do not meet the elements of the New York criminal extortion statute.  Rates has

failed to plead that Simpligent has taken Rates' property, which is a necessary component of a

claim for extortion.  Criminal extortion is a violation of New York Penal Law as follows:

> 155.05.  Larceny; defined
>
> 1. A person **steals property** and commits larceny when, with
> **intent to deprive another of property** or to appropriate the same
> to himself or to a third person, he wrongfully takes, obtains or
> withholds such property from an owner thereof.
>
> 2. **Larceny includes a wrongful taking, obtaining or**
> **withholding of another's property**, with the intent prescribed in
> subdivision one of this section, committed in any of the following
> ways:
>                                  * * *
> ((e) By extortion.

---

[5] While it is hard to understand exactly what Rates is claiming due to the poor drafting of its new claim, it seems that
Rates is actually claiming attempted extortion in that Rates actually served its Complaint despite Simpligent's
allegedly extortionate request to the contrary.

14

> **A person obtains property by extortion when he compels or induces another person to deliver such property to himself** or to a third person by means of instilling in him a fear that, **if the property is not so delivered**, the actor or another will …

New York Penal Law §155.05 (emphasis added). The gist and essential element of any claim for extortion is the taking of another's <u>property</u>. Here, Rates has not claimed, nor can it, that Simpligent has taken Rates' property. Without the taking of property, even if there were a private right of action, Rates claim must be dismissed under New York law.

Rates has no private claim for extortion under New York law.

**B.      Rates Fails To State A Claim For Prima Facie Tort**

Rates has failed to plead, nor can it prove, the requisite elements for a prima facie tort claim in New York. A claim for prima facie tort requires the following elements: (1) an intentional infliction of harm, (2) causing special damages, (3) without excuse or justification and (4) by an act or series of acts that would otherwise be lawful. *Burns Jackson Miller Summit & Spitzer v. Linder*, 59 N.Y.2d 314, 332 (1983). Rates falls far short of meeting any of those four requirements.

Simpligent's complained-of Letter was not an intentional infliction of harm, but merely an act of self defense in answer to Rates' infringement charge. Simpligent is justified in filing a Reexam (and notifying Rates of its intent to do so) because it has a good faith belief in the invalidity of at least one of Rates' patents.

With regard to the second element, as explained in more detail below, Rates has failed to plead any damages as a result of Simpligent's threat to file a reexamination, let alone special damages.

It is important to note that New York's Court of Appeals has cautioned against using prima facie tort as "a catch-all" tort or in avoidance of "the stringent requirements set for

15

traditional torts, requirements which are necessary to effectuate the strong public policy of open access to the courts for all parties without fear of reprisal in the form of a retaliatory lawsuit." *Curiano v. Suozzi*, 63 N.Y.2d 113, 119 (N.Y. 1984); *accord Belsky v. Lowenthal*, 62 A.D.2d 319, 323 (1st Dept. 1978), *aff'd*, 47 N.Y.2d 820 (1979). According to *Curiano*, allowing Rates to assert a claim of prima facie tort where the "gravamen" of Rates' claim sounds in extortion as an alternative "would be a serious misuse of the cause of action for prima facie tort and could lead to inconsistent results, confusion of issues, and a waste of judicial resources." *Curiano*, 63 N.Y.2d at 118.

### 1.    Rates Has Not Pled Special Damages

A necessary requirement of a claim for prima facie tort is the heightened pleading requirement of "special damages." *Mayer v. Morgan Stanley & Co.*, 703 F. Supp. 249, 255 (S.D.N.Y. 1988). One Court had defined special damages as "specific and measurable loses." *Merrill Lynch Futures, Inc. v. Morici*, 1990 U.S. Dist. LEXIS 152, *5 (S.D.N.Y. 1990). Here, Rates alleges that, as a result of Simpligent's threat to file for patent reexamination, Rates has been damaged: **"in an amount not known at this time, but exceeding the sum of $75.000."** Amended Complaint, ¶15 (emphasis added). This is not a specific and measurable loss. It is absurd on its face to argue that Rates has been damaged by a threat to file a Request for Reexamination, where no additional conduct has taken place. Indeed, even if the Reexam does go forward, Rates would still have to defend the validity of the patents-in-suit, which it would have to do in this litigation anyway. For this reason, not only has Rates not been injured, but it can never succeed in proving it was injured, let alone prove special damages. Rates has not pled special damages and any charge that it was damaged by a threat to file a perfectly legal reexamination request is false.

Rates' failure to allege any special damages, a critical element of a prima facie tort counterclaim, is fatal to its claim for prima facie tort and must result in dismissal. *See Mayer*, 703 F. Supp. at 255 (dismissing prima facie tort counterclaim because failed to allege special damages). Even round figures without itemization or an "accurate accounting of their source," despite identifying the nature of the damages claimed, are not satisfactory pleadings of the essential element of special damages. *Merrill Lynch*, 1990 U.S. Dist. LEXIS 152 at *5 (dismissing prima facie tort because burden of pleading special damages was not met*); O'Keefe v. Niagra Mohawk Power Corp.*, 714 F. Supp. 622, 634 (N.D.N.Y. 1989) (dismissing claim of prima facie tort because of failure to plead special damages and failure to show malicious motivation of plaintiff); *see also Ann-Margret v. High Society Magazine, Inc.*, 498 F. Supp. 401, 408 (S.D.N.Y. 1980) (finding itemizing damages as attorneys' fees, harm to reputation, encouragement of third party complaints and punitive damages failed to allege with particularity the actual losses caused by the tort).

In *Merrill Lynch Futures, Inc. v. Morici*, 1990 U.S. Dist. LEXIS 152 (S.D.N.Y. 1990), the plaintiff alleged fraud against defendant, its former employee. *Id.* at *2-3. The defendant asserted counterclaims for conversion and prima facie tort in response to plaintiff freezing her personal trading account with the firm. *Id.* at *3. The Court dismissed the counterclaim for prima facie tort, as the Court should in this case, because the defendant failed to allege special damages. *Id.* at *5 - 6 ("[i]n order to show special damages, [the claimant] must plead and prove specific and measurable losses.") (*quotations omitted*). Round figures without itemization or an "accurate accounting of their source" despite identifying the nature of the damages claimed, are not satisfactory pleadings of the essential element of special damages.

Similarly, since Rates has not alleged any damages and has not made, nor can it make, a proper showing of special damages. Accordingly, for at least this reason, the claim for prima facie tort must be dismissed.

## V.    CALIFORNIA LAW MANDATES DISMISSAL

Even if California law is somehow found to apply here, Rates causes of action for extortion and prima facie tort must still be dismissed. As explained above, New York's choice of law rules do not support the application of California law here because the contacts are substantially more attenuated than the contacts with Utah or New York and Utah has the most direct interest in regulating the conduct of its citizens. In fact, the only contacts that Rates alleges with California is that its lawyer is located there.

If this Court, however, were to somehow find that California law does apply, Rates' claim must still be dismissed as a matter of law because civil extortion in California, just like criminal extortion in Utah and New York, requires the taking of property under threat of coercive action. *St. Clair v. National Ass'n of Legislative Review*, 2001 U.S. Dist. LEXIS 9438, *7 (N.D. Cal. 2001) ("California recognizes a cause of action in tort where a defendant attempts **to obtain property** by wrongful conduct, such as a threat to institute legal proceedings where the defendant did not ant knows the claim asserted is false.") (emphasis added) (quotation omitted); Cal. Civ. Code §47. Simpligent's complaint of conduct did not involve a taking of property.

In addition, if California law applied, Rates' claim must be dismissed for the additional reasons that California provides a statutory immunity that immunizes statements made during and related to litigation.

### A.    Rates' Property Was Not Taken

Rates failed to allege, and can not prove, the loss of property as a result of the alleged extortion. This is fatal to Rates' claim under California law.

However denominated (e.g., extortion, menace, duress), our Supreme Court has recognized a cause of action for the recovery of money obtained by the wrongful threat of criminal or civil prosecution.

**The fatal flaw in plaintiff's action is that she apparently never paid the money defendants demanded in their letters.** The only actual damages plaintiff alleges are her emotional distress and attorney fees.

* * *

If plaintiff had actually paid the money demanded by defendants, she would have alleged such sum as damages. An action for duress is an action for the recovery of moneys received by a defendant under the influence of duress. As she did not pay the money demanded by defendants, plaintiff did not sustain damages cognizable in a cause of action for duress. In the absence of actual damages, punitive damages are not recoverable.

*Fuhrman v. California Satellite Systems*, 179 Cal. App. 3d 408, 426 (Cal. Ct. App. 1986),

*overruled on other grounds by*, *Silberg v. Anderson*, 50 Cal. 3d 205, 217 (Cal. 1990).

Here, not only has Rates not alleged that any property was taken by Simpligent, it has failed to identify any property whatsoever that can even be the subject of extortion. As discussed above, the foundation of an extortion claim, either civil or criminal, is the taking of property. The fact that Rates has paid no money or property to Simpligent, nor did Simpligent ask for money or property, as a result of the alleged extortion is "fatal" to Rates' claim. *See Fuhrman*, 179 Cal. App. 3d at 426. To the contrary, Simpligent's motivation was simply an act of self defense in response to what it believed to be an invalid infringement charge.

Simpligent simply wanted to be left alone and in support of the objective raised the issue of the invalidity of the patents-in-suit.

### B.   California's Civil Code §47 Immunity Applies

Similar to the *Noerr-Pennington* doctrine described earlier, California law also provides immunity for statements and publications made during certain activities, including litigation and related activities as follows:

> § 47.  Privileged publication or broadcast
>
> A privileged publication or broadcast is one made:
>
> (a) In the proper discharge of an official duty.
>
> (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:

Cal Civ Code § 47 (2005).

California's Supreme Court holds that § 47 immunity extends to tort claims and protects not only statements made at judicial proceedings, but other communications surrounding those proceedings such as negotiations, etc. and is absolute in nature. *Silberg v. Anderson*, 50 Cal. 3d 205, 215-16 (Cal. 1990).  As the California Supreme Court explained:

> The principal purpose of section 47(2) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. … The policy of enforcing free access to the courts [is] so important as to require application of the privilege to torts other than defamation.… [Therefore] the only exception to application of section 47(2) to tort suits has been for malicious prosecution actions.

*Silberg*, 50 Cal. 3d at 213, 215-16 (Cal. 1990).  California courts hold that the §47(2) privilege applies "to a publication (1) made in a judicial proceeding; (2) with a connection or logical relation to the action; (3) made to achieve the objects of the litigation; and (4) involving the

litigants or other participants authorized by law." *Fuhrman*, 179 Cal. App. 3d at 419 (*citing Asia Investment Co. v. Borowski*,  133 Cal. App. 3d 832, 842 (Cal. Ct. App. 1982).

Following this test, California courts have uniformly held that communications that are part of, or related to, litigation, either before or during litigation are immune to tort claims pursuant to §47. *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (Cal. 1993) ("numerous decisions have applied the privilege to prelitigation communications"); *Aronson v. Kinsella*, 58 Cal. App. 4th 254 (Cal Ct. App. 1997) (defendant immune from claim of libel per se based upon sending a pre-litigation demand letter accusing the plaintiff of misrepresentation); *Cayley v. Nunn*, 190 Cal. App. 3d 300 (Cal. Ct. App. 1987) (same).

In the instant case, §47 immunity applies to the Letter, which was written after the commencement of litigation between counsel.  As the Letter is obviously part of the ongoing litigation, and was made to achieve one of Simpligent's litigation objectives of establishing invalidity the patents-in-suit, §47 applies and Rates' claim for extortion must be dismissed.

As a final note, Rates is represented by California counsel, who should have been aware of California's immunity statute.  This supports Simpligent's position that Rates' new claim against Simpligent and Simpligent's attorneys is nothing more than an attempt to harass Simpligent, interfere with the attorney-client relationship and improve Rates' bargaining position.  Because Rates has clearly pled a frivolous claim with a malicious motive, this Court should sanction Rates for their litigation tactics.

## VI.    DEFENDANTS ARE ENTITLED TO SANCTIONS FOR THIS RETALIATORY CASE

This action is nothing more than another viscous attack by Plaintiff against its adversaries' attorneys. This behavior should not be tolerated.

New York has a strong public policy against permitting parties to sue their adversaries'

attorneys. The New York Court of Appeals has explained that:

> [c]ases brought for the primary purpose of interfering with an attorney-client relationship or of curtailing another's business opportunities not only waste precious judicial resources, but are also anathema to the justice system itself.

*Engel v. CBS, Inc.*, 93 N.Y.2d 195, 207 (1999).  Indeed for this very reason, New York courts

have a strong policy against allowing suits against attorneys:

> because our adversary system depends so heavily upon zealous advocacy and because public policy mandates that all persons should freely resort to the courts to redress wrongs and settle grievances, unhampered by the fear of unnecessary exposure to a subsequent suit, courts will not countenance lawsuits against attorneys unless the facts alleged fall squarely within the four corners of one of the acknowledged categories of tort or contract liability.

*Tsafatinos* v. Ward, 676 N.Y.S.2d 748, 751 (N.Y. Civ. Ct. 1998) (dismissing claim for abuse of

process against an attorney) (*citing Drago v. Buonagurio*, 46 N.Y.2d 778, 779 (1978).

Rates' bad-faith extortion/prima facie tort claim against Simpligent and Simpligent's

attorneys is absolutely frivolous under Utah, New York or even California law as demonstrated

above.  Rates should not be permitted to file mean-spirited and frivolous pleadings brought for

the purpose of harming their adversaries' attorney-client relationship or for the similarly

improper purpose of improving its settlement position.  This is now a pattern of behavior for

Rates as demonstrated by Rates' actions in this case and in the case of *LCR Technologies Inc. v.*

*Alcatel Internetworking, Inc.*, Index No.: 05-1166 (E.D.N.Y. Wexler, J.), where the same party-

in-interest also brought a claim against their adversary's attorneys.

The *LCR Technologies* case, in which Judge Wexler harshly criticized Rates' counsel,

arose from a discovery dispute from an action pending in the United States District Court for the

Central District of California entitled: *Alcatel Internetworking, Inc. v. Rates Technology, Inc.*,

No.: 03-CV-9449.   In that action, Alcatel filed a declaratory judgment action against Rates alleging, *inter alia*, patent non-infringement and patent invalidity, after receiving a cease and desist letter.   The law firm of Christie, Parker & Hale, LLP, including its employee Brian K. Brookey, represented Alcatel.   In the California Action, Rates brought a motion to dismiss, claiming that it was not subject to personal jurisdiction in California.   Before ruling on that motion, the Court in the California Action ordered the parties to undertake discovery on the issue of personal jurisdiction.   As part of that court-ordered jurisdictional discovery, Brian Brookey, sent a Subpoena *duces tecum* to Rates' bank, HSBC, requesting bank records for Rates, LCR Technologies, and the President of both companies, Gerald J. Weinberger.  The Subpoena sought documents that would show payments made to Rates and Weinberger -- some of which were funneled through their alter ego, LCR Technologies -- from California licensees, thus providing evidence of California contacts.   Rates and LCR Technologies failed to object to the Subpoena, or to move for a protective order.   Instead, Rates' counsel, wrote several letters to HSBC, demanding that HSBC object to the legally issued Subpoena.   As Rates never objected to or moved to quash the Subpoena, HSBC responded to the unopposed Subpoena.   In response to HSBC producing these documents, LCR Technologies, Rates, and their President Gerald Weinberger and his wife, filed a lawsuit against the law firm of Christie Parker & Hale, their associate and HSBC, charging, *inter alia*, abuse of process, breach of contract, and breach of fiduciary duty.   The case appeared before Judge Wexler on a motion to remand, who, while unable to sanction Rates due to his decision to decline jurisdiction, saw through Rates pretext of suing their adversary's counsel and noted that:

> the court feels constrained to comment on the practice that led to this litigation, and in particular, the conduct of attorney Hicks.[6]
> There is no question but that the orderly administration would have

---

[6] James Hicks is also the attorney who signed the Amended Complaint that is the subject of this motion to dismiss and for sanctions.

been served if Plaintiffs here (defendants in the California Action) followed federal procedure and interposed a motion to quash the Subpoena. They chose instead, to ignore federal procedure and harass the Bank for complying with what it could only interpret as a properly issued subpoena. After HSBC produced the documents, the [defendants in the California Action] again sat idly by in the federal forum, choosing instead to institute the State Court Action as a separate proceeding to punish the Alcatel Defendants for engaging in federally authorized discovery and the bank for complying with a court order. This is not the procedure envisioned by the Federal Rules.

Judge Wexler's June 14, 2005 Order, pp. 10-11, a copy is Rasich Decl, Exh. 3.[7]

The only reason that Rates continues this pattern of behavior is they have not yet been held accountable for their actions. Rates has unduly and unreasonably multiplied these proceedings, just like in other cases, by adding a baseless cause of action against Simpligent and Simpligent's attorneys. Based on Rates' filing a frivolous claim against not only Simpligent, but Simpligent's attorneys as well, Simpligent requests that this Court take this opportunity to sanction Rates, which is the only to way to prevent this type of abusive claim from being filed again in this or any other court. Simpligent should be granted its costs in bringing the instant motion pursuant to Fed. R. Civ. P. 11 and/or 28 U.S.C. §1927 and for such other and further sanction as the Court deems just and proper

---

[7] Judge Wexler's comments about Mr. Hicks supplement, and are consistent with, findings by the Central District of California that Mr. Hicks behaved "boorishly" and misrepresented facts and law; and with the Ninth Circuit's comments that Mr. Hicks engaged in "egregious" and "outlandish" conduct that raised "serious questions as to his respect for the judicial process." See January 5, 2000 Order in Christian v. Mattel, CV 9902820 NM (C.D. Cal.), at p. 14; Christian v. Mattel, 286 F.3d 1118, 1121, 1131 (9th Cir. 2002).

## CONCLUSION

For the foregoing reasons, Simpligent request that Rates Amended Complaint be dismissed in its entirety, that Simpligent be awarded its attorney's fees in bringing this instant motion to dismiss Rates' frivolous and unnecessary claim, and for such other and further relief as this Court deems just and proper.

Dated: October 31, 2005  
      New York, New York

Respectfully submitted,

By: _____  
    Douglas A. Miro (DM 2535)  
    Douglas Q. Hahn (DH 3032)  
    OSTROLENK, FABER, GERB & SOFFEN, LLP  
    1180 Avenue of the Americas  
    New York, New York 10036  
    Telephone: (212) 382-0700  
    Facsimile: (212) 382-0888

        and

    Kory D. Christensen  
    Marc T. Rasich  
    David L. Mortensen  
    Matthew D. Thayne  
    STOEL RIVES LLP  
    201 S. Main St., Suite 1100  
    Salt Lake City, Utah 84111  
    Telephone: (801) 328-3131  
    Facsimile: (801) 578-6999

    Attorneys for Defendant/  
    Counterclaim Plaintiff Simpligent LLC